UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEANNE POWERS,

                        Plaintiff,

           -vs-                                  15-CV-187-JTC

KEARNS, BRINEN & MONAGHAN, INC.

                        Defendant.
_____

APPEARANCES:        LAW OFFICES OF KENNETH HILLER (SETH ANDREWS, OF COUNSEL), Amherst, New York, Attorneys for Plaintiff.

                                  GOLDBERG SEGALLA LLP (BRIAN R. BIGGIE, OF COUNSEL), Buffalo, New York, Attorneys for Defendant.

## INTRODUCTION

Plaintiff brought this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").  Presently before the court is the defendant's motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 9).  For the reasons that follow, the motion is granted and the complaint is dismissed.

## BACKGROUND and FACTS

This action was commenced pursuant to the FDCPA with the filing of a Summons and Complaint on March 2, 2015 (Item 1).  In her complaint, plaintiff alleged that she

incurred a debt with Rapid Advance ("Rapid") and defaulted on the debt. *Id.,* ¶¶ 9, 11. Thereafter, defendant was hired by Rapid to collect the subject debt. *Id.,* ¶ 12. Plaintiff alleges that the subject debt was incurred "primarily for personal, family and/or household purposes" and that defendant is a "debt collector" as that term is defined in the FDCPA . *Id.,* ¶¶ 5, 10. Plaintiff has alleged numerous violations of the FDCPA resulting from defendant's repeated telephone calls and threats of legal action in an effort to collect the debt. *Id.,* ¶¶ 13-23.

Defendant filed an Answer to the complaint asserting, *inter alia,* that plaintiff's claim for alleged violations of the FDCPA is barred because telephone calls by a debt collector related to a commercial loan are exempt from provisions of the FDCPA. Item 4, ¶ 34. On August 12, 2015, defendant filed this motion for summary judgment seeking dismissal of the complaint or, in the alternative, an order excusing defendant from participation in the court's Alternative Dispute Resolution program. Item 9.

In support of the motion, defendant submitted an affidavit of Patrick Siegfried, Assistant General Counsel of Rapid, who stated that Rapid provides finance services to small businesses nationwide. Item 12, ¶ 2. It does not provide personal loans to individuals. *Id.,* ¶ 3. Defendant also submitted plaintiff's loan application, in which plaintiff is listed as the "Business Applicant," her business as "Destination by Lee," a "Retail Clothing" business, and the intended use of the requested cash advance as "spring inventory." Item 12-1. Additionally, defendant has submitted a Future Receivables Sale Agreement, in which plaintiff agreed to remit a daily percentage of the future credit card sales of her business until Rapid was paid $7,590. Item 12-2. The agreement states that

the business is "Destination by Lee," located at 12 Monroe St., Ellicottville, New York. *Id.* The agreement further provides that the "[m]erchant understands, agrees and represents that this transaction is made for business or commercial purposes only." *Id.,* ¶ 1. Finally, defendant submitted a letter from Northwest Savings Bank in which an employee of the bank stated that the physical business address for plaintiff's business, "Destination by Leanne Powers," is 12 Monroe St., Ellicottville, New York. Item 12-3.[1] Following the execution of the Future Receivables Sale Agreement, Rapid wired $5,500 to plaintiff's Northwest Savings Bank account. Item 12-4.

In response to the motion, plaintiff asserts that she sought a loan from Rapid in March 2014 because she "was in need of some money to pay personal expenses." Item 18, ¶¶ 3-4. She states that she "was given" a loan application from Group ISO, a broker, but she did not complete or sign the loan application that has been submitted in support of the motion. *Id.,* ¶ 10. Plaintiff provided Rapid with three months of bank statements from her account with Northwest Savings Bank, which is in the name of "Leanne Powers, d/b/a Destination by Lee." Plaintiff states that she stopped operating this business in July 2013 and the account was used as a personal account. *Id.,* ¶¶ 7-8. At the time of the application, plaintiff was operating a clothing business called Flurry & Co. at the Monroe St. address in Ellicottville, New York *Id.,* ¶¶ 4, 11. Plaintiff agreed to remit 25% of the future credit card receivables from her clothing store, located at 12 Monroe St., Ellicottville, New York, to pay off the cash advance. *Id.,* ¶ 11. She acknowledges that the Future

---

[1] The court recognizes that the business name, "Destination by Leanne Powers," specified by the Northwest Savings Bank employee, is an inexact representation of plaintiff's actual business name, "Destination by Lee."

3

Receivables Sale Agreement lists "Destination by Lee" as the business name and that she signed the agreement, but states that she did not prepare the agreement. *Id.*, ¶ 12. She was not aware of the provision in the Future Receivables Sale Agreement that provides that the transaction was for business purposes only. *Id.* Plaintiff states that she never intended the money to be used for anything but personal expenses and did, in fact, use the money for non-business purposes. *Id.*, ¶¶ 13, 15. Accordingly, plaintiff argues that the obligation is a debt as that term is defined in the FDCPA and the actions of defendant in attempting to collect the debt are subject to the provisions the statute. Alternatively, plaintiff argues that the motion is premature and that further discovery is necessary to oppose the motion.

## **DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden to show the court why it is entitled to summary judgment. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). If the movant sustains its burden, the burden then shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *See Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)

(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970)). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587.

The FDCPA seeks to eliminate abusive debt collection practices, including conduct by the debt collector meant to "harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, and the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Consequently, the first question in any claim brought under the FDCPA is whether the allegedly violative conduct was used in an attempt to collect a "debt" within the meaning of the FDCPA. *See, e.g., Mabe v. G.C. Servs. Ltd. P'ship.*, 32 F.3d 86, 87–88 (4th Cir. 1994).

The FDCPA defines "debt" as follows:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Accordingly, actions arising out of commercial debts are not covered by the protective provisions of the FDCPA. *See Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006).

To determine whether a particular debt is commercial or personal in nature, "courts 'examine the transaction as a whole,' paying particular attention to the 'purpose for which

the credit was extended.'" *Anderson v. Granoff, Walker & Forlenza, P.C.,* 2012 WL 1066801, *3 (S.D.N.Y. Mar. 27, 2012) (quoting *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992)).  Here, the record indicates that the transaction was a cash advance in exchange for a percentage of the future receivables from plaintiff's business.  Rapid is in the business of providing finance services to small businesses.  Plaintiff signed the Future Receivables Sale Agreement which specified that Rapid was purchasing from the "Merchant," Leanne Powers, d/b/a "Destination by Lee," 25% of the daily credit card receivables until Rapid was paid $7,590.  Item 12-2.  The agreement clearly states "[t]he parties hereby agree that the transaction contemplated by this Agreement is not a loan, a forbearance of money lent or any similar loan or lending transaction. Merchant understands, agrees and represents that this transaction is made for business or commercial purposes only."  *Id.*  Examining the transaction as a whole, and paying particular attention to the purpose for which the credit was extended, *Anderson v. Granoff, Walker& Forlenza, P.C.,* 2012 WL 1066801 at *3, the court finds that the transaction was a commercial purchase of future receivables, not a consumer debt.  *See Sanchez v. Hoosac Bank,* 2014 WL 1326031, *4 (S.D.N.Y. Mar. 31, 2014) (court found loans at issue were "clearly" commercial loans, as indicated by a "business loan agreement" secured by a "commercial promissory note"); *Ross v. Panteris & Panteris*, LLP, 2013 WL 5739145, *11 (D.N.J. Oct. 22, 2013) (court considered the "intended purpose" and "end use" of the funds, in addition to "the nature of the transaction giving rise to the obligation" and concluded that plaintiffs failed to establish that the debt in question was a consumer debt, where Business Charge Card Agreement stated explicitly: "You agree that you will use the Card for

commercial or business purposes.... You agree to use the Account only for purchases that are lawful and are permitted under this Agreement."); *Anderson v. Granoff, Walker & Forlenza, P.C.,* 2012 WL 1066801, at *4 (loan was found to be commercial in nature where applicant applied as a business, secured loan to pay off a prior mortgage, and pledged commercial property as collateral).

As defendant has sustained its burden on the motion for summary judgment, the burden shifts to the plaintiff to identify evidence which creates a genuine issue of material fact. In response to the motion, plaintiff states that she intended from the outset that the funds were to be used for personal expenses and, in fact, used the funds on non-business expenditures. She argues that it is the ultimate use of the borrowed funds that is determinative of the commercial or personal nature of the debt. Item 18-6, p.2. Plaintiff relies primarily on *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) in which the court found that an informal loan from one friend to another was a business loan, as the borrower used the money to invest in a software company. In *Bloom,* the court stated that "[n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." *Id.,* at 1068

The present case is clearly distinguishable from *Bloom* and its progeny. In *Bloom*, the court had only the ultimate use of the funds to consider, as the lender did not know or care how the money was to be spent and the transaction lacked the typical trappings of a commercial loan. Here, in contrast, all the loan documents indicate that this transaction was commercial in nature. Even assuming, for purposes of the motion, the truth of plaintiff's assertion regarding her use of the funds, plaintiff's unstated intentions do not

transform this commercial transaction, the sale of future receivables, into a consumer loan. There is no proof that plaintiff advised Rapid or Group ISO that she sought the cash advance for personal reasons or that they extended credit to her based on her expressed desire for a personal loan. To the contrary, Rapid states that it provides finance services to small businesses nationwide and does not provide personal loans to individuals. The agreement expressly states that the transaction is made for business purposes only.

Plaintiff has proffered additional representations in an effort to raise a genuine issue of material fact. She denies that she completed the application that listed the intended use of the funds as "spring inventory." Even accepting the truth of her statement that she did not physically complete the application, it defies logic that Group ISO, the broker and source of the application, would have known plaintiff's former business name and type of business, and would have asserted the need for spring inventory without plaintiff's input. Given plaintiff's apparent repudiation of the application, however, the court has not considered the application itself as proof of the commercial nature of the loan. In any event, reliance on the application is not necessary to a determination of the motion. The Future Receivables Sale Agreement, which plaintiff does not deny she executed, is sufficient to convey the business nature of the transaction.

Plaintiff further argues that Rapid should have known that she intended to secure a personal loan as it had access to three months of statements from her Northwest Savings Bank account, could have reviewed her account activity, and should have determined that the account was a personal account. This argument is an attempt to shift the burden back to the defendant, when it is plaintiff's burden to prove the elements of her claim, namely that the obligation was a consumer debt. Here, the account was opened

8

and maintained in the name of plaintiff's former business and Rapid was advised by plaintiff's bank that "Destination by Lee" was a current business located at the Ellicottville address.  Likewise, Rapid could not be expected to know that the account was a personal account, and thus the loan was a personal loan, based on the fact that the d/b/a "Destination by Lee" is apparently defunct and that plaintiff's current business, Flurry & Co., operates out of the Ellicottville address.  Plaintiff made no effort to correct the business name on the Future Receivables Sale Agreement that she executed and even her bank was under the impression that "Destination by Lee" was an operating business entity.  None of these issues alters the explicit commercial nature of the Future Receivables Sale Agreement, which plaintiff signed and which specifies that the transaction is not a loan and was for commercial purposes only.

The court finds that plaintiff has failed to raise a genuine issue of material fact with respect to the commercial or personal nature of the transaction.  Considering the purely commercial transaction, the explicit contractual language that the transaction was not a loan, and the nature of Rapid's business in providing financing to small businesses, plaintiff's undisclosed motivations in securing the cash advance and her later use of that money in breach of the Future Receivables Sale Agreement are insufficient to transform this transaction from a commercial sale agreement to a personal loan.  Accordingly, the court finds that defendant has sustained its burden on the motion, establishing that the cash advance was a business transaction, and that plaintiff has failed to establish a requisite element of her claim, that she incurred a debt as that term is defined in the FDCPA.

Finally, plaintiff argues that discovery is necessary to properly oppose the motion.

Specifically, she asserts that discovery could uncover a signed application and that she would benefit from disclosure of Rapid's "procedures and protocols," the extent of Rapid's knowledge of the use of funds in plaintiff's Northwest Savings Bank account, and the number of incidences in which Rapid has sought to enforce the clause in the Future Receivables Sale Agreement. *See* Item 18-6, p. 7.  Further discovery cannot alter the explicit commercial nature of the Future Receivables Sale Agreement and plaintiff has failed to suggest any evidence that would raise a genuine issue of material fact as to the nature of this transaction.

## **CONCLUSION**

Based on the foregoing analysis, the defendant's motion for summary judgment (Item 9) is granted and the complaint is dismissed.  The Clerk of the Court is directed to close the case.

So ordered.

      \s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   December 9, 2015